UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

UNITED STATES OF AMERICA,

v.

CARTER TILLERY,

Petitioner.

Criminal Action No. 3:10-CR-223
Civil Action No. 3:14-CV-275

## MEMORANDUM OPINION

THIS MATTER is before the Court on *pro se* Petitioner Carter Tillery's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") (ECF No. 85). For the reasons set forth below, the Court DENIES the § 2255 Motion.

### I.   BACKGROUND

#### a.   *Factual Background*

On the morning of August 1, 2009, Anna Cho ("Cho") was working alone at the Swan Cleaners in Petersburg, Virginia. An unmasked man entered the store, pulled a gun with a "long barrel" from his back, and pointed it toward her. Cho tried to pepper spray the man. But the man said, "Stop, lady, I will shoot you. Stop lady, I will shoot you."

Cho then dropped the pepper spray, opened the cash register, and raised her hands above her head. The man turned around and locked the store's front door. Cho then emptied the cash register—totaling approximately $50 to $100—and handed it to the man.

The man then ordered Cho to collect her personal bag and go to the back room of the small store. He pointed the gun at Cho as they walked to the back room. The man demanded more money from Cho, and she emptied her purse onto the floor and also gave him $6 from her pocket.

Then Cho and the man heard someone trying to open the front door of the dry cleaner.

This caused the man to hurry, repeating his request for money and then ordered Cho to "strip it." The man pointed the gun at Cho and told her to strip her clothing. She removed all of her clothing except her underpants. The man then ordered Cho to kneel onto the ground with her forehead on the floor. He tied her hands behind her back with a phone cord and some of her clothes. All the while, Cho was apologizing to the man for pepper spraying him.

The man then left Cho and began trying to open doors and cabinets throughout the store. He reappeared wearing a ski mask over his face. He told Cho to count to 100 and call the police. The man grabbed Cho's personal keys and Apple laptop computer, and then fled out the back door. In total, Cho was with the man for ten or fifteen minutes before he donned a mask.

After the robbery, sometime during August 2009, a man came into Demontray Pulliam's ("Pulliam") Petersburg barbershop and offered to sell him an Apple laptop computer for $150. Pulliam accepted this offer. Pulliam had seen this man twice before and knew the man's brother personally.

The following month, Petersburg Police Detective Roosevelt Harris ("Detective Harris") received information that a laptop had been sold at Pulliam's barbershop. Pulliam provided the laptop to Detective Harris, who realized from the serial number and desktop folders that it was Cho's stolen Apple laptop. Pulliam identified Carter Tillery ("Tillery") as the man who sold him the laptop.

Two days later, on September 25, 2009, Detective Harris showed Cho a sequential photo array, and Cho identified Tillery as the robber.

### b.  *Procedural Background*

On August 4, 2010, a federal grand jury in the Eastern District of Virginia returned a two-count indictment against Tillery, alleging: (1) Hobbs Act robbery affecting commerce, in violation of 18 U.S.C. § 1951(a) (count one); and (2) using, carrying, and possessing a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1) (count two). (ECF No. 1.) On October 19, 2010, the grand jury returned a superseding indictment alleging the same two

counts but with small changes to the pleading. (ECF No. 22.)

On December 14 and 15, 2010, Tillery was tried by a jury and convicted of both counts in the superseding indictment. Tillery was represented by Robert Wagner ("Wagner"). This Court sentenced Tillery on August 1, 2011 to 240 months' imprisonment on count one and 120 consecutive months' imprisonment on count two, to be followed by five years of supervised release. (*See* ECF No. 61.) Tillery filed a timely notice of appeal to the United States Court of Appeals for the Fourth Circuit (the "Fourth Circuit"). (ECF No. 60.) Tillery was represented by Vaughan Jones ("Jones") on appeal.[1] After hearing argument, the Fourth Circuit affirmed Tillery's conviction and sentence in a published opinion. *United States v. Tillery*, 702 F.3d 170 (4th Cir. 2012). Tillery then filed a petition for a writ of certiorari in the United States Supreme Court, which was denied on May 13, 2013. His subsequent petition for rehearing was denied on June 24, 2013.

Tillery filed the present § 2255 Motion on April 15, 2014. In his § 2255 Motion, Tillery alleges various grounds for relief:

> Ground One:  Ineffective assistance of counsel, which violated Tillery's Sixth Amendment rights

> - Claim A: Wagner was ineffective for failing to file a motion to dismiss the indictment because the robbery did not affect interstate commerce, as required by the Hobbs Act.

> - Claim B: Wagner was ineffective for failing to object to the Government's constructive amendment of the indictment by adducing evidence of the victim dry cleaner's additional locations.

> - Claim C: Wagner was ineffective for not objecting to the Court's comments to the jury that disclosing their numerical division would result in a mistrial.

> - Claim D: Wagner was ineffective for failing to object because the indictment was constructively amended when he was sentenced for brandishing a sawed-off shotgun.

---

[1] Because Jones' law license was suspended, Tillery was represented by Charles D. Lewis ("Lewis") at oral argument before the Fourth Circuit. (*See* § 2255 Motion, Exs. O-1, O-2.)

- **Claim E:** Wagner was ineffective for prohibiting Tillery from testifying at trial.

- **Claim F:** Wagner was ineffective for failing to subpoena two witnesses.

- **Claim G:** Wagner was ineffective for failing to call Special Agent Todd Fleming about interstate commerce.

- **Claim H:** Wagner was ineffective for not moving to suppress the identification procedure.

- **Claim I:** Wagner was ineffective for not objecting to the stipulation agreement about the custody of the telephone cords.

- **Claim J:** Jones was ineffective for not raising on direct appeal that the Government engaged in misconduct by asking Tillery's victim to identify the firearm used to rob her.

- **Claim K:** Wagner was ineffective for failing to file a motion to dismiss due to selective prosecution.

- **Claim L:** Wagner was ineffective for failing to address the Court on the reading of the Hobbs Act.

- **Claim M:** Jones was ineffective for not raising on direct appeal the admission of two sawed-off shotguns at trial.

- **Claim N:** Jones was ineffective for not raising on direct appeal the validity of the jury instruction on interstate commerce.

- **Claim O:** Jones was ineffective for not immediately notifying Tillery that his law license was suspended after the appellate brief was filed.

- **Claim P:** Jones was ineffective for failing to raise on direct appeal that "attempt" should have been charged as a separate, distinct count.

- **Claim Q:** Lewis was ineffective for failing to file a motion for rehearing en banc at Tillery's request.

- **Claim R:** Lewis was ineffective for failing to file a motion for rehearing en banc because the Fourth Circuit made false statements of fact.

- **Claim S:** Lewis was ineffective for allowing the Fourth Circuit to make a false statement of fact.

- **Claim T:** Wagner was ineffective for allowing the Government to "merge other entities" in assessing interstate commerce.

- **Claim U:** Jones was ineffective for failing to raise ineffective assistance of counsel claims against Wagner on direct appeal.

- Claim V: Wagner was ineffective for advising Tillery that his prior convictions would have been admissible for purposes of impeachment

Ground Two: Under new Supreme Court law, Tillery is no longer a career offender.

Ground Three: Tillery is "actually innocent" of the robbery because the victim dry cleaner was not engaged in interstate commerce.

The United States filed its response in opposition on May 12, 2014 ("Gov'ts Resp.") (ECF No. 90) and Tillery subsequently filed a reply on May 22, 2014 ("Reply Mem.") (ECF No. 93). The issue is now ripe for review.

## II.   LEGAL STANDARD

Under 28 U.S.C. § 2255 ("§ 2255"), a prisoner in federal custody may attack his sentence on four grounds: (1) the sentence violates the Constitution or the laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. § 2255(a); *see also Hill v. United States*, 368 U.S. 424, 426–27 (1962). A claim which does not challenge the constitutionality of a sentence or the court's jurisdiction is cognizable in a § 2255 motion only if the alleged violation constitutes a "miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). To prevail under § 2255, the movant bears the burden of proof by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958); *United States v. King*, 36 F. Supp. 2d 705, 707 (E.D. Va. 1999). A *pro se* petitioner is held to a less exacting standard than an attorney in drafting his petition. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Therefore, the Court generously interprets Tillery's factual allegations and legal contentions.

## III.   DISCUSSION

(1) Ground One: Ineffective Assistance of Counsel Claims

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both that: (1) his attorney's performance fell below an objective standard of reasonableness, and (2)

he suffered actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong of *Strickland*, the performance prong, requires the petitioner to "'show that counsel's representation fell below an objective standard of reasonableness' measured by 'prevailing professional norms.'" *Lewis v. Wheeler*, 609 F.3d 291, 301 (4th Cir. 2010) (quoting *Strickland*, 466 U.S. at 688). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. When making an ineffective assistance of counsel determination, a court must consider "the practical limitations and tactical decisions that counsel faced." *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). The second prong of *Strickland*, the prejudice prong, requires the petitioner to show that counsel's errors were serious enough to deprive the petitioner of a fair trial. *Strickland*, 466 U.S. at 687. In essence, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. If it is clear the petitioner has failed to satisfy either prong of the *Strickland* standard, a court need not inquire into whether he satisfied the other. *Id.* at 697.

This ineffective assistance of counsel standard likewise applies to direct appeals of criminal convictions. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). The Fourth Circuit has additionally held that appellate counsel's decision as to which issues are suitable for appeal "is entitled to a presumption that [counsel] decided which issues were most likely to afford relief on appeal." *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993).

As the Government did in its opposition memorandum, the Court too will divide Tillery's ineffective assistance of counsel claims between his trial counsel and appellate counsel.

//

//

//

### A. Trial Counsel

#### 1. Claim A

A motion to dismiss an indictment challenges "an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012) (citation and internal quotation marks omitted). An indictment will be deemed legally sufficient, therefore, "(1) if it alleges the essential elements of the offense, that is, it fairly informs the accused of what he is to defend; and (2) if the allegations will enable the accused to plead an acquittal or conviction to bar a future prosecution for the same offense." *United States v. Rendelman*, 641 F.3d 36, 44 (4th Cir. 2011) (citations omitted). While it is often sufficient for the indictment to track the language of the statute, *id.*, "the indictment must include every essential element of an offense, or else the indictment is invalid; and mere reference to the applicable statute does not cure the defect," *United States v. Kingrea*, 573 F.3d 186, 191 (4th Cir. 2009) (quoting *United States v. Darby*, 37 F.3d 1059, 1063 (4th Cir. 1994)) (internal citations and quotation marks omitted).

Here, Tillery first argues that Wagner was ineffective for failing to file a motion to dismiss the indictment because Swan Cleaners was not engaged in interstate commerce. Tillery's argument clearly challenges *facts*, rather than the legal sufficiency of the indictment. Thus, based on the applicable law defined above, Wagner was not ineffective for declining to file a motion to dismiss the indictment.

Additionally, in this first claim for relief, Tillery suggests that that Hobbs Act is unconstitutional and as such "is void and is no law at all." However, similar claims have previously been rejected by the Fourth Circuit, *see United States v. Singleton*, 178 F. App'x 259, 262 (4th Cir. 2006), and this Court will follow suit.

#### 2. Claims B & T

In Claim B, Tillery argues that Wagner was ineffective for failing to object to the

Government's "constructive amendment" of the indictment and allowing the Government to introduce evidence of Swan Cleaners' interstate nexus that was not alleged in the indictment. In Claim T, Tillery argues that Wagner was ineffective for allowing the Government "to merge other entities" into Tillery's jury trial. In sum, Tillery claims that counsel should have objected to the Government introducing evidence of other branches of Swan Cleaners conducting interstate commerce.

Fourth Circuit precedent permits a court to examine the "aggregate" of economic activity in determining the impact on interstate commerce for a Hobbs Act violation. *See United States v. Williams*, 342 F.3d 350, 354 (4th Cir. 2003). On direct appeal of the instant case, the Fourth Circuit confirmed this theory. "Viewed in the aggregate, it is clear that robbing a place of business, especially Swan Dry Cleaners–which necessarily relies on out-of-state suppliers to operate–has an interstate commerce connection." *United States v. Tillery*, 702 F.3d 170, 174 (4th Cir. 2012). Thus, as the Government succinctly states, "Wagner's performance was not deficient when he failed to object to a valid, accepted legal theory." (Gov'ts Resp. at 13.)

### 3. Claim C

In his third claim for relief, Tillery argues that Wagner was ineffective for failing to object and request Judge Spencer's recusal after the Court provided specific instructions to the jury at the conclusion of the trial. Tillery challenges the following instruction:

> Now, any verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. In other words, your verdict must be unanimous.
> . . .
> Each of you must decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.
> . . .
> . . . I want to be certain that you never tell us how you stand. We don't want to know what your split is, if there is a split, prior to a unanimous verdict. That is, if we had an inquiry and the Foreperson stood up and said, "Well, Judge, we are eight to four," this would be very bad, because this would result in a

8

> mistrial, meaning you all would go home but I would have to do this again. That would be a very bad thing. So we don't want to hear from you until the verdict is unanimous.

Trial Tr. Vol. II 361:8–364:1.

Tillery appealed the Court's given instruction, arguing that "the district judge's instructions 'clearly left the jurors with the impression that anything short of a unanimous verdict would reflect negatively on the competency of their deliberations.'" *Tillery*, 702 F.3d at 175–76 (citation omitted). The Fourth Circuit ultimately rejected Tillery's argument, holding that "[w]hen the challenged instruction is read in its context," the district judge did not commit plain error. *Id.* at 176. Rather, "[w]hen the challenged instruction is read in its context, the district judge told the jury 'to never tell us how you stand,' as *that* would result in a mistrial." *Id.* The Fourth Circuit held that "[t]his instruction was in accordance with our ruling in *United States v. Penniegraft*, where we asserted that '[u]nquestionably, it is plain error for a trial judge to inquire as to the numerical division of a jury.'" *Id.* (quoting 641 F.3d 556, 575 (4th Cir. 2011)). Tillery now seeks to raise this identical issue in the present § 2255 Motion.

As the Fourth Circuit noted, "when reviewing jury instructions, we do not 'view a single instruction in isolation." *Id.* (quoting *United States v. Lighty*, 616 F.3d 321, 366 (4th Cir. 2010)). Rather, "[w]e view an allegedly erroneous instruction in its full context." *Id.* (citing *Lighty*, 616 F.3d at 366). Upon review of the given instructions, and in accordance with the Fourth Circuit's ruling, *see id.*, the instant claim for relief is without merit.

Additionally, Tillery argues that Wagner was ineffective for failing to object and not requesting Judge Spencer to recuse himself after Judge allegedly violated 28 U.S.C. § 455 by "publicly expressing personal feelings about movant having a mistrial." Tillery previously raised the issue of recusal, and after appealing this Court's denial of such request, the Fourth Circuit affirmed. (*See* ECF Nos. 86, 87, 95.) Under 28 U.S.C. § 455(a), judges have a general duty to "disqualify [themselves] in any proceeding in which [their] impartiality might reasonably be questioned." As this Court previously explained, "The statements of which Tillery complains do

not evince a bias or prejudice because encouraging a jury to reach a verdict (and thereby avoid retrial) is not necessarily wrongful or inappropriate." (O., Apr. 21, 2014, ECF No. 87 at 2.)

### 4. Claim D

Next, Tillery claims that Wagner was ineffective for failing to object to the district court's "constructive amendment" to the superseding indictment. Specifically, Tillery argues that the district court expanded the scope of the alleged crime in Count Two of the superseding indictment by including a "separate element," that being the use of a sawed-off shotgun, which was not presented to the jury.

In Count Two of the superseding indictment, Tillery was charged with using, carrying, and possessing a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). (*See* ECF No. 22.) At sentencing, the Probation Officer found that Tillery had brandished a sawed-off shotgun in the course of the robbery based on the testimony at trial. (*See* Presentence Investigation Report ("PSR"), ECF No. 53, at ¶¶ 12, 15, 16.) The Court ultimately sentenced Tillery to the mandatory minimum 120 months on Count Two. 18 U.S.C. § 924(c)(1)(B)(i).

As the Government asserts, "[i]n essence, Tillery asks his attorney to be prescient that three years [after Tillery's sentencing] the Supreme Court would decide *Alleyne v. United States*, which held that '[w]hen a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury.'" (Gov'ts Resp. at 15) (quoting 133 S. Ct. 2151, 2162 (2013)). At the time Tillery was sentenced, however, *Harris v. United States*, 536 U.S. 545 (2002) was controlling precedent. That case allowed the judge to find aggravating sentencing factors under § 924(c). 536 U.S. at 565, 567–68. Because "an attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law," *Kornahrens v. Evatt*, 66 F.3d 1350, 1360 (4th Cir. 1995), Wagner's performance did not fall below an objective standard of reasonableness in this case.

//

### 5. Claim E

Next, Tillery claims that Wagner was ineffective because Wagner prohibited Tillery from testifying at trial and apprising Tillery of the fact that the ultimate decision whether to testify was within Tillery's discretion. Wagner allegedly advised Tillery that "you're not testifying." (Reply Mem. at 4.) Tillery submits that he would have told the jury "the true facts." (*Id.*) The Government argues that Tillery only provides minimal, broad assertions which fail to support his allegations. (Gov'ts Resp. at 16.)

As many courts have noted before, "[a] criminal defendant has a fundamental constitutional right to testify on his or her own behalf at trial." *United States v. Rashaad*, 249 F. App'x 972, 972 (4th Cir. 2007) (citing *United States v. Midgett*, 342 F.3d 321, 325 (4th Cir. 2003)). A defendant may choose to waive this right, and that waiver must be made voluntarily and knowingly. *Id.* at 973 (citations omitted). In order to prove this ineffective assistance of counsel claim, Tillery must show that Wagner's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for Wagner's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Tillery fails to prove either. Tillery only provides "bald legal conclusions with no supporting factual allegations." *Sanders v. United States*, 373 U.S. 1, 19 (1963). He fails to provide any specific factual support regarding how Wagner prohibited him from testifying, and fails to demonstrate that his testimony would have led to a different result. Furthermore, great deference is given to "the delicate balancing involved in any attorney's decision to advise his client whether to take the stand in his own defense." *United States v. Terry*, 366 F.3d 312, 315 (4th Cir. 2004). With this in mind, Claim E is also denied.

### 6. Claim F

In Claim F, Tillery argues that Wagner was ineffective for failing to subpoena two witnesses: (1) Petersburg Police Officer Elkins ("Elkins"), and (2) Tillery's Probation Officer. According to Tillery, Elkins would have testified to the composite sketch that was approved by

the victim. Tillery argues that Elkins "could support movants [sic] only conceivable defense of mistaken identity because he possessed material facts pursuant to that defense." Additionally, Tillery argues that the Probation Officer would have testified regarding Tillery's hairstyle, specifically that Tillery always wore a "cornrow hairstyle." This testimony would be in contrast to that of Cho's, who testified that her assailant did not have cornrows.

The Fourth Circuit has previously noted that "the decision whether to call a defense witness is a strategic decision demanding the assessment and balancing of perceived benefits against perceived risks, and one to which [w]e must afford . . . enormous deference." *Terry*, 366 U.S. at 317 (citations and internal quotation marks omitted). As the Government asserts, Wagner's decision not to call these two witnesses was entirely reasonable. Cho testified that she was interviewed by Elkins, (Trial Tr. Vol. I 151:10–13), and she told Elkins that her assailant did not have cornrows, (*id.* at 151:22–23). Any duplicative statements by Elkins regarding Cho's statements would not be necessary. Additionally, as the Government highlights, testimony from Tillery's Probation Officer could have prompted prejudicial testimony as to why Tillery was under supervision. Tillery fails to counter these reasonable explanations as to why Wagner chose not to call these two witnesses during trial, and thus fails to show that Wagner's performance fell below an objective standard of reasonableness.

### 7.  Claim G

Next, Tillery argues that Wagner was ineffective for failing to call Alcohol, Tobacco, Firearms and Explosives ("ATF") Agent Todd Fleming ("Fleming") as a "fact witness regarding interstate commerce." (Reply Mem. at 5.) Tillery submits that had Wagner called Fleming as a witness, "no reasonable juror would conclude that petitioner's conducted affected commerce." (*Id.*)

Attached to his § 2255 Motion, Tillery includes a copy of Fleming's notes from his interview with Chong Ki Kim, the owner of Swan Cleaners. (§ 2255 Mot. Ex. G-1.) Fleming's notes state that "[t]he only invoice that Mr. Kim was able to provide from the [victim dry

cleaners] was a Verizon phone bill." (*Id.*) "Mr. Kim explained that all invoices and supplies that would show interstate nexus are delivered to the main store in Colonial Heights." (*Id.*) Tillery argues that "a mere phone bill dated seven (7) months after the crime" is not sufficient to prove an interstate nexus. However, as the Government highlights, Tillery's instant ineffective assistance of counsel claim must fail.

During trial, the Government called Chong Ki Kim to the stand. (*See* Trial Tr. Vol. I 161:11–13.) Mr. Kim testified to the Verizon bill described in Fleming's notes, (*id.* at 170:6–16), as well as other detailed interstate connections, (*id.* at 162–170). Thus, Mr. Kim testified to the very same facts that Tillery now claims Fleming should have testified to. With this in mind, Tillery utterly fails to demonstrate that Wagner's performance fell below an objective standard of reasonableness, or that he suffered prejudice as a result of Wagner not calling Fleming to the stand.

### 8. Claim H

In this claim for relief, Tillery asserts that Wagner was ineffective for not suppressing the identification procedure presented to Cho. He claims that "[t]he Virginia General Assembly endorsed House Bill 207 in 2005 and mandated doubl[e]-blind photo procedures for all Virginia police departments." Petersburg Detective Roosevelt Harris allegedly did not follow such a procedure and instead "presented the photo array to the victim one photo at a time."

Cho testified at trial regarding the photo identification procedure conducted by Detective Harris. (Trial Tr. Vol. I. 139–141.) She stated,

> He [Detective Harris] told me he want [sic] me to look at some pictures, and then the picture was individually, like a stack of them, like maybe six, seven, eight, I don't know, pictures like that. I was looking at the pictures, and I saw the third picture. I told him, "It's him." So I recognized him right away.

(*Id.* at 139:22–140:2.) After Cho recognized her assailant, she continued to look at the other photographs "because [she] didn't want to make a wrong person." (*Id.* at 140:12–13.) Detective Harris did not make any comments while Cho was examining the photos, (*id.* at 140:15–17), and

Detective Harris never suggested that the robber was in those pictures, (*id.* at 140:18–20; 153:21–25). When Detective Harris testified, he noted that he showed the sequential array of photographs to Cho "one photo at a time." (Trial Tr. Vol. II 268:14–17.) Detective Harris further testified that after Cho selected the fourth photo, Cho told him "she was absolutely positive that was the gentleman that had robbed her." (*Id.* at 269:7–9.)

As noted by the Government, Cho identified Tillery as her assailant on three different occasions: (1) during the trial (Trial Tr. Vol. I 112:2–12); (2) in Petersburg General District Court, before the case was brought to federal court (*id.* at 141:21–25); and (3) when shown a photo array by Petersburg Police (*id.* at 141:12–14). It is entirely reasonable that Wagner did not move to suppress the photo identification because the jury would have still heard Cho's testimony regarding the two remaining identifications.

### 9.  Claim I

In Claim I, Tillery argues that Wagner was "ineffective for not objecting and allowing the U.S. Attorney to breach the Stipulation Agreement by questioning Police Officer Bergamini about the knowledge of the secureness of the telephone cords after they were recovered." The stipulation to which Tillery refers is as follows:

> The parties stipulate and agree that the chain of custody for the telephone cord and telephone cord with jack that were recovered from Swan Cleaners . . . by members of the Petersburg Police Department and which were introduced into evidence at trial as Government Exhibit 2, were, at all times, properly secured and maintained from the moment each item was recovered until the item was introduced into evidence at trial.

(Trial Tr. Vol. II 285:1–9.) As the Government notes, the stipulation was intended to avoid having to call the evidence custodian at the Petersburg Police Department. However, nothing in the stipulation prevented the Government from introducing evidence about how the item was collected at the time of recovery. (Gov't's Resp. at 20.) Thus, Wagner was not ineffective for failing to object to the Government's presentation of evidence, because the Government did not breach the agreement.

### 10. Claim K

Next, Tillery claims that Wagner was ineffective for failing to file a motion to dismiss due to selective prosecution. He argues that there is no probable cause that gives rise to federal jurisdiction.

"When acting on probable cause that a crime has been committed, a government prosecutor generally enjoys unfettered discretion in the decision whether to prosecute." *United States v. Olvis*, 97 F.3d 739, 743 (4th Cir. 1996) (citation omitted). Because a "'presumption of regularity' [] supports prosecutorial decisions," and a "great danger" exists in "impairing the performance of a core executive constitutional function," a defendant must support a "selective-prosecution claim with 'clear evidence.'" *Id.* (citations omitted). Specifically, a defendant must "establish both (1) that similarly situated individuals of a different race were not prosecuted, and (2) that the decision to prosecute was invidious or in bad faith." *Id.* (internal citations and quotation marks omitted). Tillery utterly fails to satisfy either of these required elements. As a result, Wagner was clearly not ineffective for failing to object due to selective prosecution.

### 11. Claim L

Tillery argues that Wagner was ineffective for failing to address the court on the application of the rule of lenity as applied to the Hobbs Act. Simply stated, Tillery wholly fails to satisfy his burden of proving that Wagner's performance fell below an objective standard of reasonableness. Tillery provides no support or evidence that Wagner should have raised this novel and unsupported argument. For that reason alone, Claim L is meritless.

### 12. Claim V

As to Tillery's last claim against Wagner, Tillery argues that Wagner was ineffective "where he incorrectly advised movant that his prior convictions would have been admissible for purposes of impeachment if [Tillery] were to testify." Rule 609 of the Federal Rules of Evidence provides for impeachment by evidence of a criminal conviction. While it is true that Rule 609 prohibits the introduction of a criminal conviction if the prejudicial effect to the defendant

outweighs the probative value of the evidence, Fed. R. Evid. 609(a)(1)(B), Tillery presents no evidence or argument that the Court would have made such a finding. As a result, Wagner was correct in advising Tillery that his prior criminal convictions may have been admitted at trial.

### B. Appellate Counsel

#### 1. Claim J

Tillery claims that Jones should have raised on direct appeal the issue of how the victim identified the firearm used to rob her. Specifically, Tillery argues that at trial, the United States Attorney "pointedly drew the victims [sic] attention to the guns," which he asserts created "a suggestive situation in which it was not clear whether the witness [sic] own recollection or outside premises were driving the testimony."

In applying the *Strickland* standard of ineffective assistance of counsel to appellate counsel, "reviewing courts must accord appellate counsel the 'presumption that he decided which issues were most likely to afford relief on appeal.'" *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (quoting *Pruett*, 996 F.2d at 1568). Appellate counsel need not assert all nonfrivolous issues on appeal, but rather "examine the record with a view to selecting the most promising issues for review." *Id.* (citations omitted). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* (citations and internal quotation marks omitted). With this standard in mind, Tillery falls short of establishing that Jones was ineffective for raising this specific issue on appeal. Tillery fails to provide any analysis as to why this particular issue was stronger than the issues presented.

#### 2. Claim M

Next, Tillery argues that Jones was ineffective for not raising the issue that the court erred in admitting two sawed-off shotguns into evidence. He claims that no clear link connected him to the guns.

Detective Harris testified that on September 19, 2009 he responded to the Knights Inn,

an abandoned motel. (Trial Tr. Vol. II 252:4–7; 19–25.) After arriving at the motel, Detective

Harris proceeded into one of the motel rooms, where he "observed a shotgun lying on top of one

of the beds in the room." (*Id.* at 253:21–22.) Then Detective Harris proceeded into a second

room in the motel, and when he "flipped over the mattress on one of the beds, [he] observed

another sawed-off shotgun." (*Id.* at 254:12–14.) These two shotguns were admitted into

evidence without objection. (*Id.* at 255:6–10.) It was later established that Tillery was staying in

an adjacent motel, the Travelers Inn. (*Id.* at 260.)

As the Government notes, relevant evidence is generally admissible. Fed. R. Evid. 402.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it

would be without the evidence; and (b) the fact is of consequence in determining the action."

Fed. R. Evid. 401. Based on the foregoing testimony, the Government established the relevancy

of the two guns. Tillery fails to rebut the relevancy of the guns, and as a result, fails to establish

that Jones should have raised any challenge on appeal.

### 3.  Claim N

In Claim N, Tillery asserts that Jones was ineffective for not raising on appeal the validity

of the jury instruction on interstate commerce. Specifically, Tillery claims that the Court's

instruction "omitted an essential element of the offense," thus violating his Sixth Amendment

rights.

In delivering the jury instructions, the Court explained the term "obstructs, delays, or

affects commerce" to mean "any action which, in any manner or to any degree, interferes with,

changes, or alters the movement or transportation or flow of goods, merchandise, money or

other property in commerce." (Trial Tr. Vol. II 354:20–24.) The Court further stated,

> To affect interstate commerce, a business need only be actively engaging
> in commercial activity. The direct customers or supplies for that business need
> not come from out-of-state sources. You may find that commerce was affected by
> considering whether the dry cleaner had the clothes for a period of time after the
> robbery occurred, and that closure impeded the store's ability to actively engage
> in commercial activity.

(*Id.* at 355:16–23.) Tillery takes issue with this latter instruction, arguing that it was redundant and created confusion for the jury. But, again, Tillery provides no support for his proposition, and the Fourth Circuit clearly found that Swan Cleaners had an interstate connection. *Tillery*, 702 F.3d at 174. Therefore, Tillery fails to prove that Jones was ineffective for not raising this issue on appeal.

### 4.  Claim O

Next, Tillery contends that Jones was ineffective for not immediately notifying Tillery that his license to practice law had been suspended. Tillery claims that Jones "erroneously just gave the case to a 'colleague' to appear at the Fourth Circuit oral argument 30 days prior to." Jones filed his appellate brief on January 26, 2012, and his law license was suspended from October 1 through November 30, 2012. (§ 2255 Mot. Ex. O-1.) Jones notified Tillery of his license suspension on September 20, 2012. (*Id.*) Jones then arranged for one of his colleagues, Charles D. Lewis, to appear at oral argument on October 24, 2012. (*Id.* at Ex. O-2.) Tillery fails to provide any evidence as to how this delay in notification prejudiced him, or how Lewis' oral argument caused a different result than would have otherwise occurred. *See Strickland*, 466 U.S at 694.

### 5.  Claim P

In Claim P, Tillery argues that Jones was ineffective for failing to challenge on direct appeal that "attempt" should have been charged as a separate, distinct count in the superseding indictment. Tillery contends that had Jones raised this issue on appeal, "the Fourth Circuit would have found the evidence most favorable to the movant and reversed the conviction due to the facts." However, as the Government notes, Tillery provides no authority for his contention that "attempt" should have been charged in a separate count.

The superseding indictment alleged that Tillery "did knowingly and unlawfully obstruct, delay, and affect, and attempt to obstruct, delay and affect commerce." (ECF No. 22.) The Hobbs Act mirrors the language in the superseding indictment: "Whoever in any way or degree

obstructs, delays, or affects commerce . . . by robbery or extortion or *attempts* or conspires so to do . . . shall be fined under this title or imprisoned not more than twenty years, or both." 18 U.S.C. § 1951(a) (emphasis added). Because the statute lists attempt within its text, Tillery cannot show that Jones was ineffective for failing to raise this issue or that the outcome would have been different if he had.

### 6.  Claims Q & R

In Claims Q and R, Tillery contends that Lewis was ineffective for failing to file a rehearing en banc that Tillery requested. In Claim Q, Tillery submits that he directly emailed Lewis and requested the rehearing, but Lewis' "only response was to put issues in a Habeas Corpus." (Mot. Ex. Q-1). Specifically Tillery argues in Claim Q that he wanted to challenge this Court's instruction to the jury regarding a unanimous verdict. In Claim R, Tillery again contests the interstate nexus, and argues that the Fourth Circuit "clearly made statements of false facts of record in their opinion."

Rule 35 of the Federal Rules of Appellate Procedure states that "[a]n en banc hearing or rehearing is not favored and ordinarily will not be ordered unless: (1) en banc consideration is necessary to secure or maintain uniformity of the court's decisions; or (2) the proceeding involves a question of exceptional importance." Fed. R. App. P. 35(a)(1)–(2). In a party's petition for a hearing or rehearing en banc, the petition must state that "the panel decision conflicts with a decision of the United States Supreme Court or of the court to which the petition is addressed," or "the proceeding involves one or more questions of exceptional importance." Fed. R. App. P. 35(b)(1)(A)–(B).

The Third Circuit in *Coney* noted that "[u]nlike the mandatory jurisdiction of the courts of appeals in a direct criminal appeal, en banc rehearing by the courts of appeals is discretionary." *United States v. Coney*, 120 F.3d 26, 28 (3d Cir. 1997). "Although a defendant is entitled to counsel on the first appeal as of right, *Evitts v. Lucey*, 469 U.S. 387, 396 (1985), he does not have a constitutional right to counsel–effective or otherwise–in pursuing discretionary

review of a conviction." *Loc Huu Bui v. United States*, Nos. 5:10-CR-205-FL-1, 5:13-CV-258-FL, 2014 WL 582954, at *9 (E.D.N.C. Feb. 13, 2014) (citing *Wainwright v. Torna*, 455 U.S. 586, 587 (1982)). Thus, because no Sixth Amendment right to counsel attaches to a discretionary en banc rehearing, an ineffective assistance of counsel claim cannot be sustained. *United States v. MacDonald*, 966 F.2d 854, 859 n.9 (4th Cir. 1992).

Moreover, Tillery could not plausibly show either prejudice or unreasonable performance here. Tillery's allegations would fail to satisfy either of the two requirements for granting a rehearing en banc. *See* Fed. R. App. P. 35. Additionally, Tillery cannot show that he would have obtained relief from the en banc petition, and that fact is underscored by the Supreme Court's denial of his petition for a writ of certiorari. *Tillery v. United States*, 133 S.Ct. 2369 (2013).

### 7.  Claim S

Next Tillery contends that Lewis was "ineffective for allowing the Fourth Circuit to make a false statement on important facts of issue in their opinion." Specifically, Tillery takes issues with the Fourth's Circuit's holding that the DNA evidence taken from the telephone cord was inconclusive. He contends that had Lewis raised this argument, then the Government could not have proven Tillery guilty beyond a reasonable doubt. In response, the Government argues that the testimony provided at trial supports the Fourth Circuit's ruling.

The Fourth Circuit's opinion noted that "DNA samples taken from the [telephone] cord proved inconclusive." *Tillery*, 702 F.3d at 172 n.1. At trial, Wendy Cohn ("Cohn"), Forensic Scientist of the Virginia Department of Forensic Science, testified. (*See* Trial Tr. Vol. I 196:8– 16.) Cohn performed forensic DNA analysis on the telephone cord as well as the shotgun in this case. (*Id.* at 201:22–202:4.) She was provided with the DNA profiles for Cho and Tillery. (*Id.* at 202:19–20; 202:24–203:1.) Cohn then developed a DNA profile after swabbing the ends of the telephone cords. (*Id.* at 205:20–24.) Although she eliminated Tillery from the DNA profile, "[t]here wasn't enough information to actually draw a conclusion regarding [Cho]." (*Id.* at

206:22–207:3.) Cohn further described the challenges in collecting touch DNA, and the variables that may affect collection. (*See id.* at 199–201.) Based on her testimony, the Fourth Circuit's conclusion in footnote one was not incorrect—the DNA sample on the telephone cords was in fact inconclusive. Therefore, Lewis was not ineffective for failing to correct the Fourth Circuit, as there was nothing to correct.

### 8.  Claim U

Next Tillery claims that Jones was ineffective for failing to raise ineffective assistance of counsel claims against Wagner on direct appeal. The Supreme Court in *Massaro* held, "There may be cases in which trial counsel's ineffectiveness is so apparent from the record that appellate counsel will consider it advisable to raise the issue on direct appeal." *Massaro v. United States*, 538 U.S. 500, 508 (2003). However, if appellate counsel does not raise the issue on appeal, the petitioner may raise such claims in a § 2255 motion. *Id.* "Because [Tillery's] ineffective assistance of trial counsel's claims can be, and have been, fully considered in this § 2255 proceeding, [Tillery] [i]s not prejudiced by appellate counsel's failure to raise trial counsel's ineffectiveness on direct appeal." *United States v. Harris*, No. 3:12-CV-127, 2013 WL 4749903, at *8 (E.D. Va. Sept. 3, 2013). Because Tillery cannot show prejudice, the instant claim must be denied. *See Strickland*, 466 U.S. at 697.

(2) <u>Ground Two: Under New Supreme Court law, Tillery is No Longer a Career Offender</u>

Tillery's presentence investigation report ("PSR") notes that Tillery qualifies for the Career Offender enhancement, pursuant to United States Sentencing Guideline § 4B1.1(c), "as the defendant has two prior qualifying adult convictions, specifically, the defendant was convicted of Robbery and Use of a Firearm in the Commission of a Felony in 1999, and he was convicted of Eluding Police in 2003." (PSR, ECF No. 53, ¶ 43.) Tillery now takes issue with the latter offense.

The Government assumes, and Tillery confirms in his reply (Reply Mem. at 8), that the "new Supreme Court law" Tillery references is *United States v. Simmons*, 649 F.3d 237 (4th Cir.

2011). *Simmons* was decided on August 17, 2011—"almost five months before Tillery's appeal brief was filed in the Fourth Circuit." (Gov'ts Resp. at 29.) However, Tillery did not raise this issue on direct appeal.

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and 'actual prejudice,' [citations omitted], or that he is 'actually innocent,' [citations omitted]." *Bousley v. United States*, 523 U.S. 614, 622 (1998). This "procedural-default rule . . . is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Tillery fails to demonstrate either "cause and actual prejudice" or that he is "actually innocent," and thus this claim is procedurally defaulted.

(3) Ground Three: Tillery is "Actually Innocent" of the Robbery Because the Victim Dry Cleaner Was Not Engaged in Interstate Commerce

In his final ground for relief, Tillery argues that he is actually innocent of the Hobbs Act violation because Swan Cleaners was not engaged in interstate commerce. Importantly, however, "neither the United States Supreme Court nor the Fourth Circuit has recognized a freestanding actual innocence claim as an independent ground for habeas relief." *Broyles v. United States*, No. 2:11cv496, 2013 WL 6885128, at *5 (E.D. Va. Dec. 30, 2013) (citations and internal quotation marks omitted). "This is because actual innocence is not itself a constitutional claim, but [is] instead a gateway through which a habeas petitioner must pass to have [his] otherwise barred constitutional claim considered on the merits." *Id.* (citation and internal quotation marks omitted). Therefore, Tillery's instant claim must be denied.

**IV.   EVIDENTIARY HEARING**

Generally, an evidentiary hearing is required under § 2255 unless it is clear from the pleadings, files, and records that a movant is not entitled to relief. *United States v. Witherspoon,* 231 F.3d 923, 925–27 (4th Cir. 2000); *Raines v. United States,* 423 F.2d 526, 529–30 (4th Cir.

1970). The district court must hold an evidentiary hearing when the "movant presents a colorable . . . claim showing disputed facts beyond the record and a credibility determination is necessary in order to resolve the issue." *United States v. Evans*, 429 F. App'x 213, 214 (4th Cir. 2011) (citations omitted). Whether an evidentiary hearing is necessary is within the discretion of the district court. *Raines,* 423 F.2d at 530. Based on a thorough evaluation of the pleadings and records, it is clear that Tillery is not entitled to relief. Thus the request for an evidentiary hearing is DENIED.

## V.    **CERTIFICATE OF APPEALABILITY**

A district court that enters a final order denying a § 2255 motion must grant or deny a certificate of appealability. Rule 11(a) of the Rules Governing Section 2255 Proceedings. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Miller-El*, 537 U.S. at 336–38 (citing *Slack*, 529 U.S. at 484). For the reasons stated more fully above, no law or evidence suggests Tillery is entitled to further consideration of his claims. Accordingly, the Court DENIES a certificate of appealability.

## VI.    **CONCLUSION**

For the foregoing reasons, the Court hereby DENIES the § 2255 Motion and DENIES a certificate of appealability.

Let the Clerk send a copy of this Memorandum Opinion to the *pro se* Petitioner and all counsel of record.

An appropriate Order shall issue.

ENTERED this ___11th____ day of June 2015.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

23